UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JEFFREY L. G.,[1] | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:20-cv-00583-DLP-JRS ) |
| KILOLO KIJAKAZI, | ) ) ) |
| Defendant. | ) |

## ORDER

Plaintiff Jeffrey L. G. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g); 1383(c). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

### I.   PROCEDURAL HISTORY

On February 27, 2019, Jeffrey filed his application for Title II DIB and protectively filed his application for Title XVI SSI. (Dkt. 15-2 at 218-234, R. 214-230). Jeffrey alleged disability resulting from atrial fibrillation with a

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

pacemaker/defibrillator, coronary artery disease, congestive heart failure, cardiomyopathy, hypertension, and angina. (Id. at 256, R. 252). The Social Security Administration ("SSA") denied Jeffrey's claim initially on April 22, 2019, (Dkt. 15-2 at 59, 68, R. 55, 64), and on reconsideration on June 3, 2019. (Id. at 77, 87, R. 73, 83). On June 12, 2019, Jeffrey filed a request for a hearing, which was granted. (Id. at 134, R. 130).

On February 12, 2020, Administrative Law Judge ("ALJ") Jennifer Smiley conducted a video hearing from Orland Park, Illinois, with Jeffrey and his counsel appearing in Indianapolis, Indiana, and vocational expert Ken Jones participating by phone. (Dkt. 15-2 at 31, R. 27). On March 6, 2020, ALJ Smiley issued an unfavorable decision finding that Jeffrey was not disabled. (Id. at 19-26, R. 15-22). On March 12, 2020, the SSA received Jeffrey's appeal of the ALJ's decision. (Id. at 216, R. 212). On August 31, 2020, the Appeals Council denied Jeffrey's request for review, making the ALJ's decision final. (Id. at 5-7, R. 1-3). Jeffrey now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g); 1383(c).

## II.  STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform the work he previously engaged in and, based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then he must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 416.920. (A negative answer at any point, other than step three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id*. at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant – in light of his age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Jeffrey is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The

ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.  BACKGROUND

#### A. Factual Background

Jeffrey was 43 years old as of the alleged onset date of April 1, 2017. (Dkt. 15-2 at 25, R. 21). He has a high school education. (Id.). He has past relevant work history as an assembler, aluminum pool installer, swimming pool installer and servicer, maintenance mechanic, and truck driver. (Id. at 24-25, R. 20-21).

#### B. ALJ Decision

In determining whether Jeffrey qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a) and concluded that Jeffrey was not disabled. (Dkt. 15-2 at 19-26 R. 15-22). At Step One, the ALJ found that Jeffrey had not engaged in substantial gainful activity since the alleged onset date of April 1, 2017. (Id. at 21, R. 17).

At Step Two, the ALJ found that Jeffrey suffered from the severe medically impairments of chronic heart failure and cardiomyopathy. (Id.).

At Step Three, the ALJ found that Jeffrey's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§

404.1529(d); 404.1525; 404.1526; 416.920(d); 416.925; 416.926)). (Id. at 21-22, R. 17-18).

After Step Three but before Step Four, the ALJ found that Jeffrey had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a), with the following limitations: occasional climbing of ramps/stairs; never climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, or crawling; and avoiding concentrated exposure to extreme cold, extreme heat, and humidity. (Dkt. 15-2 at 22, R. 18).

At Step Four, the ALJ determined that Jeffrey is not able to perform his past relevant work. (Id. at 24-25, R. 20-21). At Step Five, relying on the vocational expert's testimony, the ALJ determined that, considering Jeffrey's age, education, work experience, and RFC, he was capable of adjusting to other work with jobs existing in significant numbers in the national economy in representative occupations such as a charge account clerk, order clerk, and ink printer. (Id. at 25-26, R. 21-22). The ALJ thus concluded that Jeffrey was not disabled. (Id. at 26, R. 22).

### IV.   ANALYSIS

Jeffrey argues that this matter should be remanded because the (1) the ALJ's decision is based on cherry-picked evidence that overlooks his difficulties in functioning; (2) Step Three analysis is flawed; (3) ALJ failed to build a logical bridge from the evidence to her RFC conclusions; and (4) Commissioner's Step Five decision was not supported because neither the RFC or hypothetical posed to the

7

vocational expert incorporated all limitations. (Dkt. 17 at 1-2). The Court will address the arguments in turn.

### A. Step Three

First, Jeffrey argues that the ALJ erred during the Step Three analysis by failing to adequately consider whether his heart condition meets or medically equals Listing 4.02. (Dkt. 17 at 10-13). In response, the Commissioner maintains that the ALJ's findings were supported by substantial evidence. (Dkt. 19 at 6-12).

Under Step Three of the sequential evaluation process, if a claimant has an impairment that meets or medically equals the criteria of an impairment found in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumptively disabled and qualifies for benefits. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). The Listings specify the criteria for impairments that are considered presumptively disabling. *Minnick*, 775 F.3d at 935 (citing 20 C.F.R. § 404.1525(a)). A claimant may also demonstrate presumptive disability by showing that his impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. *Id.* (citing 20 C.F.R. § 404.1526).

It is the claimant's burden to prove that his condition meets or equals a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment with medical findings. *Minnick*, 775 F.3d at 935; *Sims*, 309 F.3d at 428; *Maggard v. Apfel*, 167

F.3d 376, 380 (7th Cir. 1999). Medical equivalence is based upon medical findings and the opinion of "one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R § 404.1526(b)–(c); *see also Barnett*, 381 F.3d at 670 ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.").

When "considering whether a claimant's conditions meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668-69 (7th Cir. 2004). "However, the Seventh Circuit has held that in the absence of a contradictory medical opinion, where there is no evidence to support a listing, the ALJ can rely on the consultant reviewing opinions that no listing is met or equaled, even without articulating such reliance in the decision." *Dora R. v. Berryhill*, Case No. 1:17-cv-4114-TWP-TAB, 2018 WL 5830726, at *5 (S.D. Ind. Nov. 7, 2018) (citing *Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004)).

Listing 4.02 requires, in relevant part:

Chronic heart failure while on a regimen of prescribed treatment . . . [and]:
    A. Medically documented presence of . . . :
        1. Systolic failure . . . with . . . [an] ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); . . . AND
    B. Resulting in one of the following:
        1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC [(medical consultant)], preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or . . .

> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
> a. Dyspnea, fatigue, palpitations, or chest discomfort . . . .

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 4.02.

In her opinion, the ALJ acknowledges that Jeffrey's heart failure should be evaluated under Listing 4.02, states that Plaintiff's counsel directed her to testing showing an ejection fraction of 15%, but concludes that "the record, which is discussed in detail below, does not include findings sufficient to establish any of the requirements for sub-part B of listing 4.02." (Dkt. 15-2 at 22, R. 18). In the RFC section, the ALJ goes on to summarize Jeffrey's medical records and subjective statements. (Id. at 22-24, R. 18-20). Although the medical evidence could demonstrate the presence of seriously limited activities of daily living, the record evidence contains no evidence that Jeffrey was unable to perform an exercise tolerance test or that a medical consultant concluded an exercise test would present significant risk to him. The ALJ's analysis as to whether Jeffrey's heart failure meets Listing 4.02, while conclusory, is supported by substantial evidence. As to whether Jeffrey's impairments medically equal Listing 4.02, the ALJ was entitled to rely on the opinions of the state agency reviewing physicians even without articulating such reliance in the opinion. *Dora R.*, 2018 WL5830726, at *5. Because the state agency physicians considered Listing 4.02 and concluded that it was not met or medically equaled, and Plaintiff has not presented evidence to rebut that conclusion, the ALJ's finding of no medical equivalence is supported by substantial evidence. This issue is affirmed.

## B. Residual Functional Capacity

Next, Jeffrey asserts that the ALJ failed to complete a proper function-by-function analysis of his work capabilities. (Dkt. 17 at 14-15). Jeffrey argues that the ALJ failed to adequately consider the side effects of his heart condition in addition to his subjective allegations, which led to an insufficient RFC analysis. (Id. at 14-19). Jeffrey contends that the ALJ should have included more restrictive limitations for walking and prolonged standing, climbing ramps and stairs, and kneeling, crawling, stooping, or crouching. (Id.). Finally, Jeffrey maintains that the ALJ should have included limitations for use of his left arm due to his cardiac implantation and time off-task due to the symptoms of his heart condition. (Id. at 18-20).

Social Security Ruling 96-8p explains that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." (S.S.A. July 2, 1996), 1996 WL 374184, at *1. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id*. The ALJ is required to address the claimant's exertional and non-exertional capacities. The exertional capacity defines the claimant's remaining abilities "to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." *Jeske v. Saul*, 955 F.3d 583, 595–96 (7th Cir. 2020). While the Ruling instructs that each function must be considered separately, the Seventh Circuit has recently concluded "that a decision lacking a seven-part function-by-function

11

written account of the claimant's exertional capacity does not necessarily require remand" if the reviewing court can determine that the ALJ considered the claimant's ability to perform all seven functions. *Jeske,* 955 F.3d at 596 (citations omitted). Thus, the question for this Court is "whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske*, 955 F.3d at 596.

The ALJ's RFC found that Jeffrey could perform "sedentary work as defined in 20 CFR 404.1567(a) . . . ." (Dkt. 15-2 at 22, R. 18). The referenced regulatory definition follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). It is unclear whether the ALJ's analysis, viewed alongside the whole record, demonstrates that she considered all functional limitations in arriving at her RFC assessment for Jeffrey. The ALJ detailed Jeffrey's allegations and the medical evidence about his capacities to sit, stand, and walk[2]. (Dkt. 15-2 at 22-24, R. 18-20). But it is not at all clear whether the ALJ adequately considered Jeffrey's ability to lift and carry. This is especially troublesome given Jeffrey's argument that the ALJ erred by including "no accommodation for limitations

---

[2] By definition, sedentary jobs do not require pushing and pulling. *See Burrell v. Colvin*, No. 1:13-cv-90, 2014 WL 3079489, at *7 (N.D. Ind. July 7, 2014) (citing 20 C.F.R. § 404.1467).

stemming from Plaintiff's left arm due to his cardiac implantation." (Dkt. 17 at 18). Specifically, Jeffrey testified that he has difficulty lifting anything with his left arm because it pulls the leads on his cardiac implantation, and that his doctors told him if the leads come out any further he will require another surgery to put the leads back into position. (Id.). Indeed, at the hearing, Plaintiff's counsel asked the vocational expert whether any work would be available to an individual who had no use of the left upper extremity, to which the vocational expert replied that there would be no work available. (Dkt. 15-2 at 56, R. 52). The ALJ does not mention any information or testimony regarding Jeffrey's left arm usage at any point in her decision. The ALJ may well have considered this issue and decided that no RFC limitations were warranted, but she was required to say so. Without any such analysis in the opinion, the Court is prevented from engaging in a meaningful review, and this issue warrants remand.

Similarly, Jeffrey asserts that the ALJ's decision should be remanded for failure to address the VE's testimony regarding time off-task and absenteeism at the hearing. While it is true that the ALJ did not include a limitation for time off-task or absences in Jeffrey's RFC, at the hearing the ALJ solicited from the vocational expert his opinion concerning Plaintiff's off-task time and absences, which indicates that the ALJ did consider this issue. (Dkt. 15-2 at 55-56, R. 51-52); *see Kukec v. Berryhill*, No. 16 CV 9805, 2017 WL 5191872, at *3 (N.D. Ill. Nov. 9, 2017) (ALJ's questioning of vocational expert on off-task time indicates ALJ's consideration of issue for RFC, but error occurred when ALJ included no analysis of

13

off-task time in opinion); *see also Diaz v. Berryhill*, No. 2:17-cv-314, 2018 WL 4627218, at *8 (N.D. Ind. Sept. 27, 2018) (same). Specifically, the vocational expert testified that a hypothetical individual who was off-task 10% of the day would not be eligible for any employment, and also that a hypothetical employee who missed one day or more in an average month (including tardiness) would not be eligible for any employment. (Dkt. 15-2 at 55-56, R. 51-52).

The ALJ's error occurs by considering the issues of off-task time and absences at the hearing, but then failing to provide any analysis of either issue in her opinion. Nowhere in the ALJ's opinion does she address either of these potential functional limitations, either one of which would be case dispositive and result in a finding that Jeffrey was disabled. The ALJ may have decided that neither limitation was warranted based on the record at hand, but this Court is unable to ascertain whether the ALJ adequately considered these two potential RFC limitations. *Lothridge*, 984 F.3d at 1234 (citing *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019). On this issue as well, the ALJ failed to provide a logical bridge from the evidence to her conclusion.

Accordingly, the Court finds the ALJ's RFC analysis lacking, and remand is required to further address these issues.

### C. Subjective Symptoms

Finally, Jeffrey argues that the ALJ engaged in an improper SSR 16-3p credibility analysis. (Dkt. 17 at 20-24; Dkt. 21 at 14-18). The Commissioner

maintains that the ALJ's analysis is supported by substantial evidence. (Dkt. 19 at 12-21).

"In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p and articulate the reasons for the credibility determination." *Karen A. R. v. Saul*, No. 1:18-cv-2024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019). SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms.[3] First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms, such as pain, and determine the extent to which they limit his ability to perform work-related activities. *Id.* at *3-4.

A court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is "patently wrong." *Burmester*, 920 F.3d at 510 (internal quotation marks and citation omitted). To satisfy this standard, the ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano,* 556 F.3d at 562. An ALJ's evaluation is "patently wrong" and subject to remand when the ALJ's

---

[3] SSR 16-3p became effective on March 28, 2016, (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *13, replacing SSR 96-7p, and requires an ALJ to assess a claimant's subjective symptoms rather than assessing his "credibility." By eliminating the term "credibility," the SSA makes clear that the "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029 at *1. The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges are not in the business of impeaching a claimant's character." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

finding lacks any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Cassandra S. v. Berryhill*, No. 18-00328, 2019 WL 1055097, at *5 (S.D. Ind. Mar. 6, 2019).

At step two of the Rule 16-3p analysis, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 404.1529(c)(3). Although the Court will defer to an ALJ's subjective symptom finding that is not patently wrong, the ALJ must still adequately explain his subjective symptom evaluation "by discussing specific reasons supported by the record." *Pepper*, 712 F.3d at 367. Without this discussion, the Court is unable to determine whether the ALJ reached her decision in a rational manner, logically based on her specific findings and the evidence in the record. *Murphy*, 759 F.3d at 816 (internal quotations omitted); *see also* SSR 16-3p, at *9.

When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individuals own statements. To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *8. The ruling also explains that "[p]ersistent attempts to obtain relief of symptoms, such as

16

increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id.* at *9.

    The ALJ summarized Jeffrey's medical history and some of Jeffrey's testimony at the hearing, and then concluded that the intensity, persistence and limited effects of Jeffrey's claimed symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Dkt. 15-2 at 22-24, R. 18-20). The ALJ fails to acknowledge that the state agency reviewing physicians concluded that Jeffrey's subjective symptoms were supported by the medical evidence in the record. (Dkt. 15-2 at p. 63, 72, 81, 87, R. 59, 68, 77, 91). Additionally, as noted previously, the ALJ did not mention a few important points, such as Jeffrey's testimony that he has to be cautious in using his left arm so as not to pull on his cardiac implantation leads. (Dkt. 15-2 at 53-53, R. 48-49). The ALJ also did little more than list some of Jeffrey's activities of daily living, without including his qualifications regarding exertion level, resting, and when his defibrillator fires. The ALJ never actually explains how Jeffrey's subjective symptoms are inconsistent with the record, beyond the conclusory sentence stating as such. Without any explanation, the Court is left to guess what the ALJ considered and finds no logical bridge linking the evidence to the RFC conclusion. Thus, remand is warranted on this issue.

### V. CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

So ORDERED.

Date: 3/18/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record via email.